

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| ROBERT P. GREENE, | ) | ED102851 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 11SL-CC04007 |
| | ) | |
| PINETREE/WESTBROOKE | ) | |
| APARTMENTS, LLC, ET AL., | ) | Honorable Thomas J. Prebil |
| | ) | |
| Respondents. | ) | FILED: January 19, 2016 |

## Introduction

Robert P. Greene (Greene) appeals from the judgment of the trial court entering an order of civil contempt against him in his ongoing civil lawsuit against Pinetree/Westbrooke Apartments, LLC, Gannon Joint Venture, L.P., the Gannon Management Company of Missouri, William E. Franke, David Weygandt, John Shipley, Michelle Sinn, and Christin McKay (collectively, Respondents). He argues the trial court erred in granting civil contempt because there was no order that could serve as a basis for the civil-contempt judgment, the civil-contempt judgment failed to set forth facts showing contempt, and there was insufficient evidence supporting the grant of damages. We reverse and remand for further proceedings in accordance with this opinion.[1]

---

[1] Greene has filed a motion to strike Respondents' Supplemental Legal File, Volume II of II on the basis that it contains documents not before the trial court when it entered the judgment now before us on appeal. Our review of

Background

Greene and Respondents are involved in ongoing litigation regarding Greene's allegations that Respondents diverted or mismanaged funds from Pinetree Club and Westbrooke Village Apartment complexes (the Apartments) for Franke's personal use, thus breaching fiduciary duties to Greene, a minority owner of the Apartments and a limited partner of Gannon Joint Venture, resulting in a loss of equity to Greene totaling millions of dollars. During the litigation, Respondents entered into a contract to sell the Apartments, and the trial court ordered that all sale proceeds after payment of the mortgage debt and closing costs would be held by the court registry pending the resolution of the litigation. The court further ordered that because Greene's interests were protected by the court's order, Greene must withdraw his pending notices of *lis pendens* by June 9, 2014. Greene did so on June 13, 2014.

Thereafter, Greene filed a motion for procedural safeguards regarding the sale's proceeds of the Apartments, requesting the trial court to enter an order requiring, as relevant to this appeal, Respondents to provide Greene with a draft closing statement at least one day prior to closing. After a hearing on July 9, 2014, the trial court denied the motion, noting the procedural safeguards were unnecessary and expressing disapproval of requests that were the "piecemeal type of stuff that we don't seem to be able to rid ourselves of in these cases."

Although the trial court declined to require that Respondents provide Greene with a draft closing statement, the next day, July 10, 2014, Greene contacted the title company by email to request a copy of the closing statement in advance of the closing date. Respondents then filed a

Respondents' Supplemental Legal File, Volume II, reveals that it includes a Revised Memorandum of Filing containing four exhibits that were submitted to the trial court on October 15, 2015. The judgment on appeal before this Court was entered on January 30, 2015, more than nine months prior to the exhibits included in Respondents' Supplemental Legal File, Volume II. We will not consider evidence that was not before the trial court when it entered its judgment. See The Bus. Bank of St. Louis v. Apollo Invs., Inc., 366 S.W.3d 76, 78 n.2 (Mo. App. E.D. 2012). Accordingly, Greene's motion to strike Respondents' Supplemental Legal File, Volume II of II is granted.

2

motion for contempt and an application for a show-cause order, asserting that Greene's action in contacting the title company violated the court's prior "determination" and had jeopardized the sale of the Apartments. Respondents requested the court require Greene to show cause as to why he should not be held in contempt for his violation of the court's prior ruling on Greene's request for an advance copy of the draft closing statement. Respondents recognized the trial court had not issued an order after the July 9 hearing, but argued that was because the parties were reviewing the transcript before submitting a written order for the court's determination. Neither party ever submitted an order.

The trial court granted Respondents' application for a show-cause order, setting the contempt motion for a hearing. At the contempt hearing, Greene argued the trial court lacked jurisdiction to issue a show-cause order and to make a finding of contempt because there was no court order that Greene violated. Respondents argued that the trial court had issued an oral order at the July 9 hearing stating Greene was not entitled to a copy of the closing statement, and, regardless, even if the trial court had not issued an order, the court still had the inherent power to impose sanctions. The trial court issued a judgment stating:

> The damages hearing with respect to the order to show cause is called and heard by this Court. Based upon the evidence adduced, the Court hereby orders, adjudges and decrees that the amount of thirty three thousand five hundred sixty nine dollars ($33,569.00) is awarded to [Respondents] and against [Greene].

Greene filed a motion to amend and/or set aside the judgment, which the trial court denied. Respondents thereafter filed garnishment applications and orders to collect on the judgment. This appeal follows.

Discussion

Greene argues the trial court erred in granting Respondents' motion for contempt and application for show cause order (contempt motion) because (1) there was no order entered by the trial court with which Greene failed to comply, (2) the trial court failed to issue a judgment setting forth facts showing contempt, and (3) no evidence was adduced attributing the cause of Respondents' alleged damages to Greene's actions. Point I is dispositive, and thus we do not consider the remaining points on appeal.

In his first point on appeal, Greene challenges the trial court's grant of Respondents' contempt motion, arguing the contempt judgment was improper because there was no existing order with which he failed to comply. We agree.

We review the trial court's order holding a person in civil contempt for whether there is substantial evidence supporting the order, it is against the weight of the evidence, or it erroneously applies or declares the law. In re Estate of Downs, 300 S.W.3d 242, 246 (Mo. App. W.D. 2009). Civil contempt is intended to benefit the party in whose favor an order, judgment, or decree was entered, by enforcing compliance with the relief granted. In re Marriage of Crow & Gilmore, 103 S.W.3d 778, 780 (Mo. banc 2003). To establish a *prima facie* case for civil contempt, the complaining party has the burden to show: (1) the other party's obligation to perform or refrain from an action as required by a court's order, and (2) the failure to meet that obligation. See Henderson v. Henderson, 389 S.W.3d 260, 266 (Mo. App. E.D. 2012). Contempt is only available where the trial court has ordered a party to perform or not perform a specific act but the party refuses to comply with the trial court's order. State ex rel. Euclid Plaza Assocs. v. Mason, 81 S.W.3d 573, 577 (Mo. App. E.D. 2002). The court order serving as a basis

4

for contempt "must be so specific and definite as to leave no reasonable basis for doubt as to its meaning." Id. (citation and internal quotation marks omitted).

Greene here did not violate any "specific and definite" order of the trial court. The trial court did not issue a written order of any sort. Although Respondents assert the trial court issued an oral order by stating Greene was "not entitled to" the relief sought, our careful review of the record does not reveal this language. Rather, the court declined to grant Greene's motion requesting that the court require a draft closing statement at least one day prior to closing, finding such relief unnecessary. In doing so, the trial court expressed irritation with Greene's request, but the court did not explicitly say Greene was "not entitled" to that relief. To the extent Respondents argue that the necessary implication of the trial court's words is that Greene was not entitled to that relief, "[i]t is well established that a court may not, in a contempt proceeding, expand by implication an order of a trial court." Id. Here, without an express order prohibiting Greene from contacting the title company for an advance draft closing statement, the trial court cannot hold him in civil contempt for doing so.

Respondents argue that even if there was no order upon which the trial court could base contempt, the trial court had the inherent authority to impose sanctions. While the trial court does indeed have the power to grant sanctions, see Mitalovich v. Toomey, 217 S.W.3d 338, 340 (Mo. App. E.D. 2007), there is no evidence that it did so here. The judgment referred to the application for a show-cause order, which was part of the motion for contempt, and made no mention of sanctions. Although there is no requirement that the word "sanction" appears in the judgment, there must be a "clear indication" that the trial court's action was intended as an award of sanctions. See McLean v. First Horizon Home Loan, Corp., 369 S.W.3d 794, 802 (Mo. App. W.D. 2012).

5

No such "clear indication" exists in the record here. Rather, Respondents had filed a motion for contempt that made no request for sanctions; Respondents stated the hearing was on their "motion for contempt[/]damages" and was a "civil contempt proceeding ... [s]eeking damages"; the trial court at the hearing further characterized Greene's arguments--that there was no order that could form the basis of the motion for contempt--as "an objection to [Respondents'] motion for contempt"; and after evidence on damages the trial court stated: "So the motion will be granted and damages ... awarded to [Respondents] in this case." In response to Greene's arguments at the hearing that there was no order upon which to base contempt, Respondents stated the trial court had the inherent power to issue sanctions instead; however, the court did not declare it was proceeding on this inherent power to sanction, nor did Respondents explicitly request that the trial court issue sanctions. In sum, other than two passing oral references to the trial court's inherent power to issue sanctions, all the pleadings and court proceedings discuss the pending motion as one solely for contempt. This court is unwilling to allow Respondents to transmute the trial court's civil contempt judgment into a sanctions judgment after the fact.

Regardless, even if the trial court had acted on its inherent power to issue sanctions, this power is not unfettered. While a party or the court *sua sponte* can initiate a procedure to impose sanctions, the basic due process principles of notice and opportunity to be heard apply. Cf. Noland v. State Farm Mut. Auto. Ins. Co., 853 S.W.2d 327, 331 (Mo. App. W.D. 1993) (involving sanctions under Rule 55.03); D.S.P. v. R.E.P., 800 S.W.2d 766, 771 (Mo. App. E.D. 1990) (involving sanctions under Section 514.205, RSMo. (1986)). Trial courts must exercise caution in invoking their inherent power to sanction, "because [i]t is only one short step from the assertion of inherent power to the assumption of absolute power." A.J.H. ex rel. M.J.H. v.

6

M.A.H.S., 364 S.W.3d 680, 682 (Mo. App. E.D. 2012) (citation and internal quotation marks omitted). Accordingly, courts "must comply with the mandates of due process." McLean, 369 S.W.3d at 801 (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991)). Here, Greene had no notice prior to the hearing on the motion for contempt that Respondents or the court would seek to impose sanctions. Because the notice requirement of due process had not been met, sanctions would not have been appropriate here, had the trial court issued sanctions.

Without a court order specifically prohibiting Greene from contacting the title company, he cannot be held in civil contempt for having disobeyed a court order, and thus the trial court erred in granting damages against Greene. See In re Estate of Downs, 300 S.W.3d at 246. Further, the trial court did not exercise its inherent power here to impose sanctions, and even if the trial court had, the imposition of sanctions would not have been appropriate, because Greene did not receive notice before the hearing that Respondents were seeking sanctions. While the trial court's power to find a party in contempt or to sanction a party is vital to the integrity of court proceedings and the enforcement of trial court rulings, the trial court's power of contempt and sanctions must be tempered by following proper procedure, as these trial court powers are potent. Point I is granted.[2]

## Conclusion

We reverse the trial court's judgment granting damages on Respondents' motion for

---

[2] Although it is unnecessary to reach Point II, in civil contempt cases, the contempt judgment must set forth the facts and circumstances that constitute contempt. See In re Estate of Zimmerman, 820 S.W.2d 617, 620 (Mo. App. E.D. 1991). Here, the trial court's contempt judgment failed to include any facts establishing a basis for civil contempt, including which order Greene allegedly violated. This lack of specificity was also fatal to the trial court's civil contempt judgment.

7

contempt, and we remand with instructions to enter judgment for Greene in accordance with this opinion.

Gary M. Gaertner, Jr., Judge

Philip M. Hess, P. J., concurs.
Angela T. Quigless, J., concurs.

8