

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| CITY OF ST. PETERS, | ) | No. ED110353 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | 2111-MU00224 |
| | ) | |
| COLLENE VELMA LIENEMANN, | ) | Honorable Rebeca M. Navarro-McKelvey |
| | ) | |
| Respondent. | ) | FILED:  October 25, 2022 |

## Introduction

The City of St. Peters (the City) appeals from the decision of the trial court dismissing citations against Collene Velma Lienemann (Lienemann) for 31 violations of the City's municipal ordinances governing property maintenance and nuisances. We reverse and remand.

## Factual and Procedural Background

This appeal arises from the dismissal of municipal citations issued by the City to Lienemann in connection with property located at 3401 North St. Peters Parkway in St. Peters, Missouri (the Property).  Between December 2020 and June 2021, the City issued 31 citations to Lienemann for violations of the City of St. Peters Municipal Code (City Code) relating to property maintenance and weeds.[1]

---

[1] All ordinance references are to the City of St. Peters Municipal Code as effective in 2020, and will be cited as City Code section __.

The municipal division of the St. Charles County Circuit Court found Lienemann guilty of all ordinance violations and sentenced her to pay fines and court costs totaling over $10,000. Lienemann timely filed an application for trial de novo in the circuit court pursuant to Rule 31.71. She subsequently filed a motion to dismiss the citations against her, arguing that, because she was not the owner or resident of the Property, she was not the proper party to be cited for the relevant ordinance violations. Lienemann attached two deeds to the memorandum in support of her motion to dismiss showing ownership of the Property by the Norman F. Lienemann Family Limited Partnership and the Virginia L. Lienemann Family Limited Partnership (collectively, the Family Partnerships).[2] The City filed a memorandum in opposition to the motion to dismiss, in which it argued that Lienemann was the proper defendant because she was the sole member of Harvester Farms, LLC—which is the general partner of each Family Partnership—and was the registered agent for the Family Partnerships. After a hearing, the trial court granted Lienemann's motion to dismiss all 31 citations against her.

The City filed a motion to reconsider or to vacate, to which it attached: records of previous municipal proceedings in which Lienemann has been found guilty of and paid fines for property maintenance code and nuisance violations allegedly occurring on the Property; an order denying Lienemann's motion to dismiss filed in a previous St. Charles Circuit Court proceeding from consolidated municipal violations, which was allegedly premised on similar arguments as those in this case; and an order removing that consolidated proceeding to the municipal division after Lienemann's withdrawal of her request for a trial de novo. After a hearing, the trial court denied the City's motion to reconsider or to vacate on February 15, 2022. The City filed its notices of appeal on February 25, 2022.

---

[2] The parties do not contest that the legal description included in the deeds is that of the Property.

Timeliness of Notices of Appeal

Lienemann challenges the timeliness of the City's notices of appeal and argues this Court must dismiss the appeal for lack of appellate jurisdiction. We disagree for the following reasons and conclude we have authority to address the merits of this appeal.

The City appeals from the trial court's January 19, 2022 dismissal of all 31 citations against Lienemann in her trial de novo from prior municipal court proceedings. The City filed a motion to reconsider or to vacate, which the trial court denied on February 15, 2022. The City filed it notices of appeal on February 25, 2022.

Proceedings arising from an ordinance violation "in all courts of this state" are governed by Rule 37. Rule 37.01.[3] "If no procedure is specially provided by this Rule 37," courts are governed by the Missouri Rules of Criminal Procedure, see Rules 19 through 36, "to the extent not inconsistent with" Rule 37. Rule 37.08.[4] Under Rule 30.01, "[a]fter rendition of final judgment in a criminal case, every party shall be entitled to any appeal permitted by law. Appeals may be taken as provided in Rule 81.04 and Rule 81.08." Rule 30.01(a). Rule 81.04 in turn provides that no appeal "shall be effective unless the notice of appeal shall be filed not later than ten days after the judgment, decree, or order appealed from becomes final." Rule 81.04(a).

Lienemann argues that the dismissal of the citations constituted a final judgment the day it was entered, on January 19, 2022, citing State v. Cooper, 599 S.W.3d 205, 206 (Mo. App. W.D. 2020) ("a judgment is final when the trial court enters an order of dismissal or discharge of the defendant prior to trial which has the effect of foreclosing any further prosecution of the defendant on a particular charge" (quoting State v. Burns, 994 S.W.2d 941, 942 (Mo. banc

---

[3] All rule references are to the Missouri Supreme Court Rules (2020).
[4] Given the specific guidance of Rule 37.08, which has been in effect in substantially the same form since 2000, we do not agree with the City's argument that the Missouri Rules of Civil Procedure govern the case at issue here.

1999))). The City, on the contrary, argues that the dismissal became a final judgment on February 18, 2022, given that Rule 81.05 provides that "[a] judgment becomes final at the expiration of thirty days after its entry …." Rule 81.05(a)(1). We agree with Lienemann.

Contrary to the City's argument, Rule 81.05 does not apply to the dismissal here because that Missouri Rule of Civil Procedure does not expressly govern municipal ordinance violation proceedings. Proceedings arising from an ordinance violation "in all courts of this state" are governed by Rule 37, see Rule 37.01, which requires we follow the Missouri Rules of Criminal Procedure 19 to 36 "[i]f no procedure is specially provided by this Rule 37," see Rule 37.08. Those Rules in turn provide that an appeal "may be taken as provided in Rule 81.04 and Rule 81.08." Rule 30.01(a). No applicable rule directs us to Rule 81.05—as such, we cannot apply it as the City suggests. See City of Florissant v. Moore, 5 S.W.3d 598, 599 (Mo. App. E.D. 1999). Instead, following the standard rules for criminal proceedings, "a judgment is final when the trial court enters an order of dismissal or discharge of the defendant prior to trial which has the effect of foreclosing any further prosecution of the defendant on a particular charge[.]" Cooper, 599 S.W.3d at 206 (quoting Burns, 994 S.W.2d at 942).

The dismissal of the citations against Lienemann constituted a final judgment on the day it was entered: January 19, 2022. The City was required to file its notices of appeal not later than ten days after this date. See Rule 33.01(a); Rule 81.04(a); see also City of St. Louis v. Addison, 461 S.W.3d 440, 443 (Mo. App. E.D. 2015); St. Louis Cnty. v. Sparks, 267 S.W.3d 699, 699–700 (Mo. App. E.D. 2008). As such, any notice of appeal was due on or before January 31, 2022.[5] See Rule 33.01(a); Rule 81.04(a); Rule 20.01(a). But the City did not file its notices of

---

[5] January 29, 2022, is exactly 10 days from the date the dismissal judgment was entered on January 19, 2022. January 29 fell on a Saturday, and therefore the notices of appeal were due the following Monday, on January 31. See Rule 20.01(a) ("In computing any period of time prescribed or allowed by these Rules, by order of court, or by any applicable statute, … [t]he last day of the period so computed is to be included, unless it is a

4

appeal until 37 days after January 19, 2022, rendering them untimely. This conclusion, however, does not end our inquiry because Rule 30.03 allows this Court to permit a party to file a late notice of appeal, in our discretion, for good cause shown. That Rule states:

> Where the defendant or the state has the right of appeal … but notice of appeal is not filed with the clerk of the trial court within ten days after the judgment becomes final, the defendant or the state may file a notice of appeal in the trial court if, within twelve months after the judgment becomes final, a motion for leave to file such notice is filed in the appropriate appellate court and it thereafter sustains the motion and grants such leave.
> Such special order may be made by the appellate court, in its discretion, for good cause shown. The order shall specify the time within which the notice of appeal is to be filed in the trial court.

Rule 30.03.[6]

On July 29, 2022, the City filed with this Court a motion for leave to file its appeal out of time pursuant to Rule 30.03.[7] The City filed this motion as an alternative to its argument that its notices of appeal were timely filed. In support of this motion, the City argued it had good cause for its late filing, highlighting "the ambiguity regarding the interplay between Rule 30.01, 81.04(a), and 81.05(a) when seeking an appeal in an ordinance prosecution matter" and "a lack of clear decisional law addressing when an order granting a motion to dismiss in an ordinance violation proceeding is considered final for the purposes of starting the 10-day window within which the aggrieved party is required to file a notice of appeal." The City further noted the

---

Saturday, Sunday, or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor a legal holiday.").

[6] Lienemann argues that Rule 30.03 is inapplicable to appeals from municipal ordinance violation proceedings, citing St. Louis Cnty. v. Glore, 715 S.W.2d 565 (Mo. App. E.D. 1986). Glore generally explained that municipal ordinance violation proceedings should be governed by the rules of criminal procedure except as to the right of appeal, which fell under the general civil appeals statute. Id. at 566–68. Glore does not aid Lienemann, however, because it was decided prior to the enactment of Rule 37.08 in 1998 (effective January 1, 2000), which established that cases arising from municipal ordinance violations are to be governed by the Missouri Rules of Criminal Procedure 19 to 36. Rule 37.08 ("If no procedure is specially provided by this Rule 37, the court shall be governed by Rules 19 to 36, inclusive, to the extent not inconsistent with this Rule 37.").

[7] The City also filed this motion pursuant to Rule 81.07, which governs civil cases and is therefore inapplicable.

5

importance and likely reoccurring nature of the legal issues presented in this appeal. Lienemann opposed this motion.

This Court issued a special order provisionally granting the City's motion under Rule 33.03 and allowing new notices of appeal for these cases to be filed within 15 days. The City complied with this order and filed a new notice of appeal in each ordinance violation case, which were filed within twelve months after the January 19 dismissal became final. See Rule 33.03. Our special order allowing the City to file these notices of appeal was a proper exercise of discretion under Rule 33.03. We therefore proceed to address the merits of this appeal.

<u>Motion to Strike Portions of the Legal File</u>

Lienemann has filed a motion to strike portions of the City's system-generated legal file. Specifically, Lienemann seeks to strike documents numbered 660 through 663, which Lienemann argues were submitted without the trial court's permission after it had entered final judgment fully disposing of the case now before us. This Court ordered the motion taken with the case. We now deny Lienemann's motion to strike for the following reasons.

On January 19, 2022, the trial court entered final judgment in this case dismissing the ordinance violation citations against Lienemann. The City proceeded to file a motion to reconsider or to vacate the judgment, which the trial court denied on February 15, 2022. Three days later, on February 18, the City submitted certified copies of three City Code provisions: section 100.020; section 215.010; and Chapter 525, including the 2015 International Property Maintenance Code (IPMC). Those documents were included in the legal file of this appeal and are the ones that Lienemann seeks to have stricken therefrom.

Although typically we do not consider documents that were not before the trial court when it entered the appealed-from decision, see Greene v. Pinetree/Westbrooke Apartments,

6

LLC, 480 S.W.3d 434, 436 n.1 (Mo. App. E.D. 2016), we decline to strike these documents from the record in this case for two reasons. First, two of the three documents at issue were merely copies of documents that were already in the record before the trial court when it ruled on Lienemann's motion to dismiss. Lienemann herself attached an uncertified copy of City Code section 100.020 in support of her motion to dismiss. And the City had previously attached a certified copy of City Code Chapter 525—albeit without including the 2015 IPMC it references—in support of its opposition to Lienemann's motion to dismiss. Second, both parties extensively referenced and cited to these ordinances in their briefing before the trial court and this Court, and the language of the ordinances are central to all parties' arguments both before the trial court and on appeal. As such, we believe there are no equitable arguments for striking these documents. See Kansas City v. Scanland, 506 S.W.2d 18, 21 (Mo. App. K.C. 1974); City of Kansas City v. Narron, 493 S.W.2d 394, 401 (Mo. App. K.C. 1973).

While we are mindful of the general rule regarding ordinance submission into the record, see City of Univ. City v. MAJ Inv. Corp., 884 S.W.2d 306, 308 (Mo. App. E.D. 1994),[8] we conclude that the ordinances at issue were sufficiently in the record before the trial court such that we will not strike the certified copies from the legal file on appeal.

Lienemann's motion to strike is denied.

### Standard of review

Appellate courts review *de novo* the grant of a motion to dismiss an information charging an ordinance violation where the dismissal is based solely on questions of law. City of Moline

---

[8] Courts, including this one, may not take judicial notice of a municipal ordinance that is not properly introduced into evidence in the record. See City of Univ. City v. MAJ Inv. Corp., 884 S.W.2d 306, 307 (Mo. App. E.D. 1994).

Acres v. Brennan, 470 S.W.3d 367, 371 (Mo. banc 2015); City of Raymore v. O'Malley, 527 S.W.3d 857, 861 (Mo. App. W.D. 2017).

Our review of a circuit court's interpretation of a city ordinance is a question of law which we likewise review *de novo*. DMK Holdings, LLC v. City of Ballwin, 646 S.W.3d 708, 712 (Mo. App. E.D. 2022). When interpreting an ordinance, courts apply the same rules as those for statutory interpretation. City of St. Peters v. Roeder, 466 S.W.3d 538, 543 (Mo. banc 2015) (citing State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City, 24 S.W.3d 681, 684 (Mo. banc 2000)). Accordingly, we seek to "ascertain the intent of the municipality, give effect to that intent, if possible, and consider the plain and ordinary meaning of the language used." See id. (citing Teefey, 24 S.W.3d at 684).

## Discussion

In three points on appeal, the City challenges the trial court's dismissal of the municipal citations against Lienemann for various property maintenance and nuisance violations.[9] We find merit in the City's second point on appeal and reverse and remand for further proceedings. Because our disposition of Point II resolves this appeal, we do not address the allegation of error raised in Point I. See Emerson v. Garvin Group, LLC, 399 S.W.3d 42, 47 (Mo. App. E.D. 2013). We do discuss the arguments raised in Point III, however, given that those issues are likely to arise upon remand. See Watson v. City of St. Peters, 599 S.W.3d 479, 488 (Mo. App. E.D. 2020).

---

[9] Although the trial court's dismissal was without prejudice, it constituted an appealable final judgment because it had "the practical effect of terminating the litigation." City of Chesterfield v. DeShetler Homes, Inc., 938 S.W.2d 671, 673 (Mo. App. E.D. 1997) (citing Skaggs v. Skaggs, 938 S.W.2d 302, 302–03 (Mo. App. E.D. 1997)); see also State v. Metzinger, 456 S.W.3d 84, 98 (Mo. App. E.D. 2015). This dismissal is a determination from which the City has the right to appeal. See Metzinger, 456 S.W.3d at 90.

<u>Lienemann as Proper Defendant (Point II)</u>

In its second point on appeal, the City contends the trial court erred in granting Lienemann's motion to dismiss because Lienemann is the proper defendant liable for these municipal violations, in that she is the person in control of the corporate entities that own the Property. We agree that the trial court erred in dismissing the citations against Lienemann.

The parties do not dispute the underlying facts: that the Property is owned by the Family Partnerships, that the general partner of each Family Partnership is Harvester Farms, LLC, and that Lienemann is the registered agent for each Family Partnership and is the sole member of Harvester Farms, LLC. The parties' sole dispute is whether these facts are sufficient to cause Lienemann to be cited for violations at the Property of the City's property maintenance and nuisance ordinances.

Here, Lienemann was cited for violations of the City's property maintenance code, <u>see</u> Chapter 525, and for violations of the City's Code covering nuisances, <u>see</u> Chapter 215. For its property maintenance code, the City has adopted the 2015 International Property Maintenance Code (IPMC).[10] <u>See</u> City Code section 525.010. The relevant IPMC section, adopted as the City Code, provides: "**Responsibility**. The *owner* of the *premises* shall maintain the structures and exterior property in compliance with these requirements, except as otherwise provided for in this code." IMPC 301.2. The nuisance ordinance provisions are found in City Code Chapter 215, which provides that "it shall be unlawful for any person, including the owner or occupant of any premises within the boundaries of the City … to maintain or permit to be maintained such public nuisance." City Code section 215.010(C). Such public nuisance includes "weeds … or grass of any type" above a proscribed height. <u>See</u> City Code section 215.010(H).

---

[10] All references to the International Property Maintenance Code are to IPMC 2015.

Under the language of the City ordinances, a "person," including an "owner," may be held liable for and be charged with a violation of the weed nuisance ordinances, and an "owner" may be held liable for and be charged with a violation of the property maintenance code. The parties disagree over whether the general City Code definitions or the IPMC definitions apply to the violations at issue here: failures to maintain property and to cut weeds. For the following reasons, we conclude the IPMC definitions apply to the City's property maintenance code, but the City Code's general definitions apply to the weed nuisance ordinances.

*City property maintenance code*

The City's property maintenance code is found in Chapter 525. City Code section 525.010 provides that:

> The 2015 International Property Maintenance Code, as published by the International Code Council, Inc., as amended, along with Appendix A, as amended, is hereby adopted as the Property Maintenance Code of the City; and all of the regulations, provisions, penalties, conditions, and terms of the 2015 International Property Maintenance Code are hereby referred to, adopted and made part thereof, as if fully set forth in this Chapter, with additions, insertions, deletions, and changes prescribed in this Chapter.

City Code section 525.010. City Code section 525.040 then lists provisions of the IMPC with the additions, insertions, deletions, and changes prescribed. Some of these changes delete entire provisions of the IMPC,[11] some replace provisions in the IPMC,[12] and some provide for specific definitions to be used.[13] No changes are listed that affect IPMC 201.1 or 202, which provide the scope and the definitions for the IPMC. See IPMC 201.1 ("Unless otherwise expressly stated,

---

[11] For example: "103.1 Delete." City Code section 525.040(A)(2). In the City Property Maintenance Code, IPMC 103.1 is therefore deleted.

[12] For example: "109.4 Emergency Repairs. For the purposes of this Section, the Code Official shall employ the necessary labor and materials to perform the required work as expeditiously as possible." City Code section 525.040(A)(8). In the City Property Maintenance Code, IPMC 109.4 is therefore replaced by this language.

[13] For example: "109.7.2 Definitions as used in Section 109.7 through 109.7.8," and providing specific definitions. City Code section 525.040(A)(13). In the City Property Maintenance Code, the definitions provided are therefore employed in relation to IPMC 109.7 through 109.7.8.

the following terms shall, for the purposes of this code, have the meanings shown in this chapter."); IPMC 202.  Given this, we believe the City intended the IPMC definitions to apply to the property maintenance code unless specifically provided for in City Code section 525.040 governing IPMC amendments.[14]

As discussed above, the City property maintenance code provides that an "owner" may be held liable for a violation of that code.  IMPC 301.2.  An "owner" is defined as:

> Any person, agent, *operator*, firm or corporation having legal or equitable interest in the property; or recorded in the official records of the state, county or municipality as holding title to the property; or otherwise having control of the property, including the guardian of the estate of any such person, and the executor or administrator of the estate of such person if ordered to take possession of real property by a court.

IPMC 202.  A "person" is in turn defined as "An individual, corporation, partnership or any other group acting as a unit."  IPMC 202.

The Family Partnerships, who hold legal title to the Property, clearly fall within the definition of who may be held liable for and be charged with a violation.  It is a more complex question whether Lienemann may be cited and held liable for a violation of the property maintenance code.

The only portion of the definition of "owner" within which Lienemann may fall is: "Any person … otherwise having control of the property."  See IPMC 202.  This Court has previously held, under the same definition of owner applicable here, that an individual who did not hold title

---

[14] We note that the City Code's general definitions and rules of construction provide:

> In the construction of this Code and of all other ordinances of the City, the following definitions and rules of construction shall be observed, unless it shall be otherwise expressly provided in any Section or ordinance, or unless inconsistent with the manifest intent of the Board of Aldermen, or unless the context clearly requires otherwise.

City Code section 100.020(A).  We believe that the City Code's statement that "all of the … terms of the 2015 International Property Maintenance Code are hereby referred to, adopted and made part thereof, as if fully set forth in this Chapter," and the fact that there are no changes to the scope or definitions provisions of the IPMC, express the City's intent to use the IPMC definitions and, further, that the context of the property maintenance code clearly requires use of the IPMC definitions.

to an apartment complex could be found guilty of a municipal property maintenance violation where the municipality "presented evidence at trial that [the individual] maintained control over the subject property," which in that case included stating to the code official that he "would hire a crew to make necessary repairs" and presenting the official "with a work scope" detailing the repairs. St. Louis Cnty. v. Heiman, 441 S.W.3d 160, 163–64 (Mo. App. E.D. 2014). Importantly, that individual also "never referred [the code official] to a different party to discuss Code violations on the property, nor did he ever indicate that anyone other than he would be needed to approve repairs at the property." Id.

In the instant case, however, no such evidence regarding "control" has been adduced. The City contends Lienemann fully controls the Family Partnerships and the Property; Lienemann contends she is merely an agent of the Family Partnerships who has no other control over the Property. Without sufficient facts before us regarding Lienemann's "control" over the Property, we are unable to determine if she may properly be held liable for the property maintenance violations. See City of St. Louis v. Londoff, 518 S.W.2d 312, 313–14 (Mo. App. St.L. 1975) (individual properly charged with violation of property maintenance ordinances where individual stipulated to being president of corporation that was owner of record of property at issue); but see City of St. Louis v. Boos, 503 S.W.2d 133, 134–35 (Mo. App. St.L. 1973) (discharge of defendant proper where evidence failed to establish individual's responsibility as an officer, agent, or member of owner corporation for property maintenance violations, where individual testified to his distance from and lack of knowledge of corporation).

We conclude the trial court erred in dismissing Lienemann as a defendant at this early stage, where further factual determinations were required to determine her potential liability. We must reverse and remand for further consistent proceedings.

12

*City weed nuisance ordinances*

City Code section 525.040 provides that ordinances covering weeds are found in "Chapter 215, Section 215.020(H) of the Municipal Code of the City of St. Peters," as opposed to adopting the language of the "Weeds" provision of the IPMC, see IPMC 302.4. City Code section 525.040(A)(53). Because this amendment refers outside the IPMC and back to another chapter of the City Code, we believe that context requires application of the City Code's general definitions as found in City Code section 100.020, rather than the definitions found in and applicable to the IPMC and City property maintenance code.

The City nuisance ordinance provides that a "person," including an "owner," may be held liable for a violation of that ordinance. City Code section 215.010(C). The general definitions of the City Code provide that an "owner" as "[a]pplied to a building, land, or personal property, shall include any part owner, joint owner, tenant in common, joint tenant or tenant by the entirety, of the whole or a part of such building, land or personal property." City Code section 100.020(A). A "person" under that section is defined to include:

> a natural person and shall extend and be applied to bodies politic and corporate, and to other similar entities, partnerships, and unincorporated associations. … Whenever the word "person" is used in any Section of this Code as to partnerships or associations, the word shall include the partners or members thereof, and as to corporations, shall include the officers, agents or members thereof who are responsible for any violation of such Section.

City Code section 100.020(A).

The Family Partnerships, who are the Property's owners, clearly fall within the definition of who may be held liable for and charged with a violation. Under the definitions applicable, the Family Partnerships are the "persons" liable as the owners.[15] And under the definition of

---

[15] Because this ordinance holds the owner of property liable, we reject Lienemann's argument that it is in conflict with state nuisance law. See Fred Kemp Co., LLC v. Braselman, 619 S.W.3d 477, 482–83 (Mo. App. E.D. 2021) (citing RSMo. Section 71.780).

"person," this includes responsible "partners or members" of the Family Partnerships. See City Code section 100.020(A). As the general partner, Harvester Farms, LLC therefore meets the definition of a liable "person." In turn, because the statute provides that such corporate entities[16] "include the officers, agents or members thereof who are responsible for any violation," Lienemann could also be a liable "person." This definition, however, turns on a factual determination of Lienemann's level of responsibility for the violation, for the Property, and within the Family Partnerships and Harvester Farms, LLC. See City Code section 100.020(A) (corporate entities liable for violations as property owners include their partners, members, officers, and agents "*who are responsible for any violation*") (emphasis added). As stated above, no sufficient evidence regarding Lienemann's level of responsibility has been adduced.

Therefore, we conclude the trial court erred in dismissing Lienemann as a defendant at this early stage, where further factual determinations were required to determine her potential liability. We must reverse and remand for further consistent proceedings.

*Dismissing the citations against Lienemann was improper because further factual*
*determinations are needed*

As explained above, the ordinance provisions defining who may be liable for property maintenance and nuisance violations could cover Lienemann depending on her level of "control" or "responsibility" for the Property and the violations thereon. Answering the question of Lienemann's possible liability for the violations demands further factual inquiry. Accordingly, it was improper for the trial court to grant Lienemann's motion to dismiss the citations against her

---

[16] The ordinance specifically provides that "corporations" includes "the officers, agents or members thereof." City Code section 100.020(A). We conclude, relying on the plain and ordinary meaning of that term, that "corporation" as used in the ordinance includes limited liability companies such as Harvester Farms, LLC. Accord *Corporation*, BLACK'S LAW DICTIONARY 429, 431 (11th ed. 2019) (including nested term "limited-liability corporation" and cross-referencing "limited-liability company"); *Company*, BLACK'S LAW DICTIONARY 350, 351 (11th ed. 2019) (defined primarily as "[a] corporation" and including nested term "limited-liability company," which is noted as being "also termed limited-liability corporation").

at this early stage in the proceedings.  See O'Malley, 527 S.W.3d at 862–63.  Upon remand, the City bears the burden to prove all elements of the alleged ordinance violations beyond a reasonable doubt—including Lienemann's liability therefor.  See id. at 863 (citing City of Kansas City v. Johnney, 760 S.W.2d 930, 931 (Mo. App. W.D. 1988)); Tupper v. City of St. Louis, 468 S.W.3d 360, 372–73 (Mo. banc 2015).

Point II is granted.

Collateral Estoppel (Point III)

In its third and final point on appeal, the City claims the trial court erred in granting Lienemann's motion to dismiss because Lienemann is collaterally estopped from arguing that she is not the proper defendant for the municipal violations at issue.  Specifically, the City asserts that Lienemann is collaterally estopped from raising this argument because she was previously found guilty of violations of the same ordinances involving the Property, she withdrew her application for trial de novo of those convictions, and she paid the fines assessed against her.  We address the City's point on appeal because it presents an issue that is likely to arise upon remand.  See Watson, 599 S.W.3d at 488.

"Collateral estoppel 'means simply that when an issue of ultimate fact has been determined by a valid final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'"  State v. Dowell, 311 S.W.3d 832, 837 (Mo. App. E.D. 2010) (quoting State v. Coleman, 773 S.W.2d 199, 201 (Mo. App. E.D. 1989)).  The principle of collateral estoppel is embodied in the 5th Amendment guarantee against double jeopardy.  Id. (citing supporting cases, including Ashe v. Swenson, 397 U.S. 436, 445 (1970)).  One fundamental aspect of the doctrine of collateral estoppel is that it is only available for use by a defendant in a criminal proceeding—not the State.  See id. at 837–38; State v. Cusumano, 399

15

S.W.3d 909, 914-15 (Mo. App. E.D. 2013). And although municipal proceedings are civil in nature, courts generally apply fundamental criminal law principles to prosecutions of municipal ordinance violations because of their quasi-criminal aspects. See Tupper, 468 S.W.3d at 372-73. Accordingly, the doctrine of collateral estoppel is not available to the City in its prosecution of the ordinance violations against Lienemann. The trial court did not err in failing to apply collateral estoppel to preclude Lienemann from asserting that she cannot be named as the defendant party for these municipal ordinance violations.

Point III is denied.

Conclusion

For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

_____
SHERRI B. SULLIVAN, J.


Angela T. Quigless, P.J., and
Robert M. Clayton III, J., concur.

16